**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| SALADIN J. GIPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 2:21 CV 71 |
| | ) |
| UNITED STATES STEEL | ) |
| CORPORATION, and UNITED | ) |
| STEEL WORKERS LOCAL 6103, | ) |
| | ) |
| Defendants. | ) |

## OPINION and ORDER

Before the court are defendant's motions for summary judgment on plaintiff's claims of race discrimination and retaliation. (DE ## 98, 104.) For the reasons set forth below, the motions are granted.

## I.    BACKGROUND

United States Steel Corporation ("USS") is a steel manufacturer with a facility known as the Midwest Plant in Portage, Indiana. (DE # 115 at 2.) USS hired plaintiff Saladin J. Gipson in 2012 as a utility technician at its Midwest Plant, which is a role he held until August 2017 when plaintiff joined USS's maintenance technician mechanical learner program. (*Id.*) Plaintiff was represented by United Steel Workers Local 6103 ("USW Local 6103") during his employment. (*See* DE # 1; DE # 106.)

Plaintiff argues that during his employment, he was subjected to racial slurs by a white employee, Candace Smith, who referred to him as the "N" word. (Pl. Dep. 74.) He claims she was reprimanded but her employment continued. (*Id.*) Plaintiff also claims

another employee, John Shipley, told plaintiff that Shipley had heard other employees talking about getting plaintiff fired and using racial slurs regarding plaintiff. (Pl. Dep. 169-70.)

Plaintiff also claims white employees were not disciplined as severely as black employees at USS. Specifically, plaintiff testified that in 2018 or 2019,[1] Griffin Baltz, a white USS employee, told two other employees that he would get his AR15 and use plaintiff as target practice. (Pl. Dep. 94.) Meanwhile, Baltz told supervisory employees that plaintiff threatened Baltz by saying, amongst other things, that "back in the day" plaintiff was a "rough hombre" and "would do some things." (*Id.* at 101.) According to plaintiff, the two men were treated differently with respect to their alleged threats. (*Id.* at 94-97.) In plaintiff's case, supervisors sat him down and informed him there was no tolerance for threats and he could be fired if the allegations were substantiated. (*Id.* at 96.) When plaintiff reported Baltz's threats, however, supervisors told the employees to "get back to work" because "we don't know what happened." (*Id.* at 97.) Plaintiff states USS ultimately concluded he did not threaten Baltz. (Pl. Dep. at 97, 101.) Plaintiff claims that supervisors were upset that they could not fire plaintiff for the alleged threats. (*Id.* at 99.) Ultimately, neither Baltz nor plaintiff were disciplined for the incident. (DE # 115 at 12.)

---

[1] USS argues that incidents occurring prior to January 1, 2020, should not be considered because any claim based upon them is time barred. (DE # 100 at 3-4.) However, the court considers all of plaintiff's allegations, time-barred or not, in order to afford plaintiff the full benefit of the doubt for purposes of this opinion only.

2

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on June 6, 2019, alleging race discrimination by USS managers. (DE # 1 ¶ 9.) Plaintiff did not bring a lawsuit following the EEOC's dismissal of the charge. (DE # 115 at 4-5.)

On January 16, 2020, plaintiff was assigned to change three sets of knives on the pickle line with a new learner, Charles Canzoreni. (DE # 115 at 6, Pl. Dep. 82-83.) Plaintiff claims that the piece of machinery he was assigned to work with, known as "shear 2," was known to be shaky, and he had asked for help with it but was denied. (Pl. Aff. ¶ 8; DE # 113 at 17.) At some point after plaintiff and Canzoreni completed their task, the pivot arm broke. (DE # 115 at 8.) USS investigated and determined that plaintiff was negligent in the performance of his duties, a conclusion plaintiff disputes. (*Id.*) On January 22, 2020, USS issued a five-day suspension to plaintiff for unsatisfactory work performance. (*Id.* at 9.) Plaintiff alleges USS falsely accused him of doing things he did not do and that they did not prove he was responsible for the pivot arm break. (*Id.*)

USW Local 6103 filed a grievance regarding the suspension on plaintiff's behalf, which resulting in a hearing on January 23, 2020. (*Id.*) USS converted the suspension to termination following the hearing. (*Id.* at 10.) By agreement with USW Local 6103, on September 2, 2020, USS issued plaintiff a $10,000 check "in the full and final settlement of all grievances" and as a "full and final settlement of the subject complaint." (*Id.*) Plaintiff accepted the check, but states he did not agree to the settlement that USW

Local 6103 negotiated on his behalf. (*Id.*) Plaintiff claims that, after USS terminated him, USW Local 6103 presented him with a journeyman's license, which was effectively a promotion. (Pl. Dep. 46-48.)

Plaintiff filed another charge with the EEOC on October 27, 2020, alleging race discrimination and retaliation. (DE # 115 at 10-11.) The EEOC issued a right-to-sue letter on November 24, 2020. (*Id.* at 14.) On February 25, 2021, plaintiff filed the present lawsuit against USS and USW Local 6103, alleging discrimination on the basis of race and retaliation for engaging in protected activity. (DE # 1.) After a lengthy discovery process, defendants each moved for summary judgment. (DE ## 98, 104.) Plaintiff filed a single response that purported to address both motions, but in actuality the response focuses almost exclusively on plaintiff's case against USS. (DE # 113.) Only USS filed a reply. (DE # 117.) The motions are now fully briefed and ripe for ruling.

## II.    LEGAL STANDARD

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). A dispute

4

about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995).

## III.    DISCUSSION

At the outset, the court notes that plaintiff devotes only a handful of sentences to defending against the summary judgment motion filed by his union, USW Local 6103. (DE # 113 at 18.) In the most substantive of those sentences, plaintiff states that "the Union failed to properly pursue his grievances and refused to allow him to move to different work assignments because of his race." (*Id.*) In support of this statement, plaintiff cites to his own complaint. (*Id.*)

Plaintiff's failure to meaningfully address his claims against USW Local 6103 renders them abandoned. *Palmer v. Marion County,* 327 F.3d 588, 597-98 (7th Cir. 2003); *see also United States v. Cisneros,* 846 F.3d 972, 978 (7th Cir. 2017) ("[P]erfunctory and

undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). Further, plaintiff may not rest on the pleadings at the summary judgment stage. *Anderson,* 477 U.S. at 248; *Donovan,* 17 F.3d at 947. For these reasons, summary judgment for USW Local 6103 is appropriate, and the remainder of this opinion will focus on plaintiff's claims against USS.

Plaintiff alleges that USS violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. That statute prohibits intentional discrimination in employment on the basis of statutorily proscribed factors, such as race. (*Id.*) In this case, plaintiff claims that USS: (A) discriminated against him by terminating him because of his race; and (B) terminated him in retaliation for filing a charge with the EEOC.

### A.    Discrimination Claim

Plaintiff asks the court to deny USS's motion for summary judgment by employing the holistic evidentiary standard set forth in *Ortiz v. Werner Enters., Inc.,* 834 F.3d 760 (7th Cir. 2016), to find that a genuine issue of material fact exists warranting trial on his discrimination claim.[2] In *Ortiz,* the Seventh Circuit instructed district courts to move away from the distinction between direct and indirect evidence. Instead, the court must ask "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, religion, sex, or other proscribed factor caused the discharge or other adverse employment action." *Id.* at 765. The ultimate inquiry under *Ortiz is*

---

[2] Title VII plaintiffs often ask the court to utilize the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), at the summary judgment stage, but plaintiff has not done so here.

whether a reasonable jury could find that the plaintiff's protected status caused the adverse action. *Lewis v. Wilkie,* 909 F.3d 858, 866–67 (7th Cir. 2018).

Where, as here, the employer has offered a nondiscriminatory explanation for its action, a Title VII claim under *Ortiz* turns on whether there is sufficient evidence for a reasonable jury to conclude that the explanation is pretext for illegal discrimination. *Vassileva v. City of Chicago,* 118 F.4th 869, 874 (7th Cir. 2024) ("We start and end with the evaluation of pretext, without asking whether Vassileva has established a prima facie case of discrimination under the burden-shifting framework created in *McDonnell Douglas* [ ], because Vassileva has chosen to proceed under *Ortiz."*). "Pretext is '[a] lie, specifically a phony reason for some action,' not 'just faulty reasoning or mistaken judgment on the part of the employer." *Napier v. Orchard Sch. Found.,* 137 F.4th 884, 892 (7th Cir. 2025). That is, pretext is not shown when the employer "honestly believed" the reason for its decision. *Anderson v. Street,* 104 F.4th 646, 654 (7th Cir. 2024); *see also Cunningham v. Austin,* 125 F.4th 783, 789–90 (7th Cir. 2025).

In this case, USS has offered a nondiscriminatory explanation for its decision to terminate plaintiff. Specifically, USS contends that plaintiff was negligent in the performance of his duties on January 16, 2020. (DE # 115 at 8.) Plaintiff makes a number of arguments in an attempt to demonstrate that USS's stated reason for his termination is a pretext for racial discrimination, none of which have any merit either in isolation or in the aggregate.

7

First, plaintiff states that he was called racial slurs by co-worker Candace Smith, and that he heard from co-worker John Shipley that other employees uttered slurs about him and wanted him fired. (Pl. Dep. 74, 169-70.) Even if the court sets aside any hearsay issues related to this proffered evidence, co-workers' comments about plaintiff have limited probative value when the ultimate question is whether *plaintiff's employer*, USS, fired plaintiff on the basis of race.[3] Unless a co-worker's comments were the proximate cause of an employee's termination, the co-worker's biases cannot be imputed onto the employer. *Lohmeier v. Gottlieb Mem'l Hosp.,* 147 F.4th 817, 828 (7th Cir. 2025). Thus, plaintiff's allegations in this regard do not support his pretext argument.

Second, plaintiff argues that USS's contention that he was fired for poor performance is negated by the fact that he was inadequately trained for his position in the first place. In support of this argument, plaintiff states that he asked to be put on a specific crew and was denied. (Pl. Dep. 136-37.) Plaintiff also claims that he was blamed for not tightening the bolts on a problematic shear that he had asked for help with. (Pl. Aff. ¶ 8.) According to plaintiff, these facts show than USS's conclusion that plaintiff performed poorly "are incorrect." (DE # 113 at 17.) However, "the issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." *McCoy v. WGN Cont'l Broad. Co.,* 957 F.2d 368, 373 (7th Cir. 1992). Because

---

[3] This is not a case in which plaintiff alleges that his co-workers' comments created a hostile work environment that his employer failed to prevent or address.

plaintiff has not provided any evidence from which the court might infer that USS did not honestly believe plaintiff performed poorly, he cannot establish pretext.

Plaintiff also claims that, after USS terminated him, USW Local 6103 presented him with a journeyman's license. (Pl. Dep. 46-48.) Plaintiff claims this is effectively a promotion and contradicts USS's contention that plaintiff was performing poorly. (DE # 113 at 11.) The court first notes that the license was granted by plaintiff's union, not USS. Even setting this logical problem aside, however, pretext requires more than a showing that the employer was mistaken or unfair; the plaintiff must point to evidence that will allow the inference that the employer's stated reason was a "lie." *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.,* 860 F.3d 494, 500 (7th Cir. 2017). Plaintiff fails to do so.

Next, plaintiff argues that pretext is demonstrated by the fact that USS did not discipline white employees as severely as black employees. Plaintiff contends that a white millwright named "Mike" nearly crushed another employee at work but was not terminated. (Pl. Dep. 133.) Plaintiff also contends that he was required to retake a test, but "Mike" was not. (DE # 113 at 11.) When using comparators to demonstrate pretext, a plaintiff must show that the comparators: (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Napier v. Orchard Sch. Found.,* 137 F.4th 884, 894–95 (7th Cir. 2025). Similarly situated employees must be directly comparable to the plaintiff in all material respects. *Id.; Simpson v. Franciscan All., Inc.,* 827 F.3d 656, 662 (7th Cir. 2016)

9

("An employee who does not have a similar disciplinary history and performance record as the plaintiff is not similarly situated."). The present record lacks sufficient information about "Mike" to establish him as a comparator, so plaintiff cannot rely on this evidence to establish pretext.

Plaintiff also claims that he and Griffin Baltz, a white employee, received different treatment when they were accused of threatening each other, because plaintiff alone was sternly addressed by superiors. Even assuming that plaintiff and Baltz are comparable employees, it is undisputed that neither plaintiff nor Baltz were disciplined after the incident. The allegation that supervisors spoke to plaintiff more sternly than they did to Baltz, but ultimately neither were disciplined, fails to contribute in any meaningful way to the establishment of pretext in this case. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81 (1998) (Title VII is not "a general civility code").

More importantly, though, plaintiff's allegations regarding Baltz – along with all of plaintiff's other allegations in this case – do not permit a reasonable factfinder to conclude that plaintiff's protected status caused the adverse action. *Ortiz,* 834 F.3d at 765, *Lewis,* 909 F.3d at 866–67. On the contrary, the record is devoid of evidence from which a jury could infer that plaintiff's race was the cause of his discharge. The Seventh Circuit has frequently reminded litigants that a federal court should not function as "a super-personnel department that second-guesses employer policies that are facially legitimate." *Widmar v. Sun Chem. Corp.,* 772 F.3d 457, 464 (7th Cir. 2014). Whether USS's decision to fire plaintiff was illogical, harsh, or unfair is not the question; the question is

10

whether the decision was based on race. *Id.* ("So long as Sun Chemical was not using its managerial decision as a foil for a discriminatory purpose, we must respect that decision."). No evidence suggests race played any part in plaintiff's termination. Accordingly, plaintiff's discrimination claim must fail.

### B. Retaliation Claim

Plaintiff also raises a retaliation claim under Title VII. To establish a claim of retaliation, a plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse impact by his employer; and (3) there is a causal link between the protected expression and the adverse job action. *Miller v. Polaris Labs., LLC,* 797 F.3d 486, 492 (7th Cir. 2015). *Ortiz* also applies to retaliation claims, so the court considers the evidence as a whole. *See* 834 F.3d at 765-66. The fundamental question is whether a reasonable juror could infer retaliation. *Miller,* 797 F.3d at 492.

Plaintiff contends that he engaged in statutorily protected activity by filing his first EEOC charge on June 6, 2019. (DE # 24-1 at 2; DE # 1 ¶ 9.) USS terminated plaintiff on January 23, 2020. (DE # 115 at 9-10.) But "[t]he mere fact that one event preceded another does nothing to prove that the first event caused the second. Rather, other circumstances must also be present which reasonably suggest that the two events are somehow related to one another." *Sauzek v. Exxon Coal USA, Inc.,* 202 F.3d 913, 918 (7th Cir. 2000) (finding insufficient evidence in record to support element of causation in retaliation claim). In this case, plaintiff has no relevant evidence to establish a genuine issue of material fact regarding his retaliation claim, other than the fact that his EEOC

11

charge preceded his termination. The court cannot rely on this fact alone to reasonably conclude that the two events are causally related. *Sauzek,* 202 F.3d at 918. Accordingly, no reasonable juror could infer that retaliation occurred in this case.

## IV.   CONCLUSION

For the reasons stated above, defendants' motions for summary judgment are **GRANTED.** (DE ## 98, 104.) The Clerk is instructed to **ENTER FINAL JUDGMENT** in this case, stating:

> Judgment is entered in favor of defendants United States Steel Corporation and United Steel Workers Local 6103; and against plaintiff Saladin J. Gipson, who shall take nothing by way of his complaint.

**SO ORDERED.**

Date: March 27, 2026

s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT